IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SAMUEL SHAW,<br><br>    Plaintiff,<br><br>v.<br><br>ELON UNIVERSITY,<br><br>    Defendant. | Civil No. 1:18-CV-00557-WO-JEP<br><br>AMENDED COMPLAINT |

NOW COMES Plaintiff, Samuel Shaw, by and through counsel, complaining of the Defendant, Elon University, alleges and says:

## NATURE OF THE ACTION

This is an action by a former student of Defendant Elon University as a result of disciplinary action taken in breach of the contract entered into by Shaw and Defendant. Shaw seeks damages and declaratory relief based on common law breach of contract claims for Defendant's failure to honor said contractual promises under North Carolina law.

## JURISDICTION AND VENUE

1. Shaw is a citizen and resident of the State of Massachusetts.

2. Defendant Elon University is a non-profit corporation which conducts business in the State of North Carolina with its principal place of business in Elon. At all times relevant to this Complaint, Elon University did business and maintained a university in North Carolina.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that Plaintiff and Defendant are of diverse citizenship, and the amount in controversy between the parties is in excess of seventy-five thousand dollars and no cents ($75,000.00).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to these claims occurred within this judicial district, and because Defendant resides in this judicial district in that it regularly conducts business within this judicial district and thus is subject to personal jurisdiction within this judicial district.

## FACTUAL ALLEGATIONS

1.      Shaw was a student at Elon University.

2.      Elon University published a Student Handbook and Code of Conduct, attached hereto as Exhibit 1, that outlines its policies and procedures relating to student conduct matters.

3.      Section 5 of the Student Code of Conduct states that procedures and rights in the student conduct process are conducted with fairness to all.

4.      Section 6 of the Code of Conduct outlines the Formal Conduct Procedures Elon University.

5.      Subsection A states that Elon University's response to a potential code of conduct violation should be handled "expeditiously and thoroughly." Consideration will be given to all available and credible information relevant to the case to ensure that a fair process and appropriate consideration are extended to all students.

6. The policy states that not all situations are of the same severity or complexity…these procedures are flexible, and are not exactly the same in every situation, though consistency in similar situations is a priority.

7. Subsection E explains the three-step process for student conduct violations, which includes a (1) preliminary inquiry; (2) a student conduct conference; and (3) a formal hearing.

8. On the evening of October 20, 2017, Shaw attended a sorority formal event.

9. Shaw did not consume alcohol on that evening. Shaw left the event by bus and was picked up from the bus drop off by Mr. Nick Marano, who was a designated driver for the evening.

10. Mr. Marano was called by phone by Mr. Nate Joslin, Shaw's friend, who requested a ride for an unidentified individual who was extremely intoxicated, belligerent, and had assaulted two female students.

11. Upon information and belief, the unidentified individual choked one female student by pushing her against a building, struck her in the face, and had hit in the face and kicked in the stomach a second female student.

12. Shaw, Mr. Marano, and Mr. Andrew Dewdney drove to Mr. Joslin's location to pick him up. Upon arriving, Shaw observed the unprovoked, unidentified individual punch Mr. Joslin in the face with a closed fist while Mr. Joslin was not looking.

13. Mr. Joslin immediately dropped to the ground and began bleeding from his face.

14. Shaw exited Mr. Marano's vehicle, tackled the unidentified individual, and struck the individual, believing that he was an imminent threat to Mr. Joslin and the two other female students that the unidentified individual had already allegedly assaulted.

15. Shaw recognized the unidentified individual as Mr. Spencer Schar.

16. Mr. Schar is the son of a large financial donor to Elon University. The newly constructed Schar Center, a 5,100 seat arena, was named in the family's honor.

17. Mr. Schar was assisted in to Mr. Marano's vehicle and was driven to his home, despite his unprovoked attack.

18. Upon information and belief, this matter was investigated by the Elon Police Department which determined that Shaw had acted in self-defense.

19. The Elon University Social Code of Conduct violation investigations begin with a preliminary inquiry. This inquiry includes conducting a preliminary investigation and identifying a list of policies that may have been violated.

20. The preliminary inquiry "typically take[s] one to seven business days to complete." At the conclusion of the preliminary inquiry, a determination may be made to moved forward with the "formal process by identifying possible code of conduct violations and sending notifications…to meet for a student conduct conference."

21. On October 30, 2017, Mr. Randall Williams, Director of Student Conduct at Elon University, interviewed Mr. Schar, along with his mother, Ms. Martha Schar.

22. During that interview, Mr. Schar did not give any description of Shaw or his involvement in the events of October 20, 2017.

11

23. During that interview, Mr. Schar indicated that he was involved in another physical confrontation later that same night in his apartment.

24. Upon information and belief, Mr. Williams, began a preliminary investigation on or about October 30, 2017.

25. On or about November 6, 2017, Mr. Schar learned Shaw's identify and provided it to Mr. Williams via email.

26. On November 28, 2017, Shaw was notified that Mr. Williams had set a student conduct conference.

27. The purpose of the student conduct conference is to "review the potential charges and sanctions" and to give the student an "opportunity to respond to the potential charges and provide information necessary to determine if and what policy violations may have occurred." The potential outcomes of this conference include "[p]ostponing and setting charges and conducting a hearing until additional information has been gathered; [s]etting charges and engaging in a more comprehensive investigation before scheduling a hearing; [or] [s]etting charges and scheduling an administrative hearing…"

28. On December 4, 2017, Mr. Williams held a student conduct conference.

29. During the student conduct conference, Shaw provided a statement of the events of October 20, 2017.

30. On December 7, 2017, Mr. Williams interviewed Mr. Dewdney and Mr. Marano, who provided statements of the events of October 20, 2017, including, at a minimum,

11

information about the knowledge and involvement of Mr. Joslin and the two female students who were allegedly assaulted by Mr. Schar.

31. On December 7, 2017, Shaw was notified that a student conduct hearing had been set.

32. According to the Student Handbook, formal hearings are typically held within 30 days of an incident. During a formal student conduct hearing, the hearing officer asks questions regarding the incident and the responding student's behavior related to the charges and considers all credible information. If necessary, the hearing officer may postpone the conclusion of the hearing for a reasonable amount of time in order to conduct additional investigation or gather more information/ evidence. The hearing will conclude with the rendering of a "Responsible" or "Not Responsible" decision for each potential violation based on the preponderance of the evidence and appropriate sanctions will be assigned if warranted. In instances where the recommended sanction may be disciplinary suspension or permanent separation, the hearing officer will consult with the dean of students prior to rendering a final decision.

33. On December 14, 2017, Mr. Williams held a student conduct hearing at 11:00 am via telephone, 55 days from the date of the incident.

34. Mr. Williams completed a "case resolution form" and it was entered at 11:17:29 am indicating that Shaw was responsible for fighting or acts of aggression and disorderly conduct.

35. On December 21, 2017, Shaw timely appealed his disciplinary suspension to the Elon University Appeal Board. The Appeal Board upheld the disciplinary suspension.

36. Inspection and review of Shaw's conduct file showed that there was no evidence about the alleged severity of Mr. Schar's injuries, no statement from Mr. Schar about the incident, and no statements from the three other material witnesses.

37. Upon information and belief, Mr. Schar received a lesser disciplinary suspension than Shaw.

## BREACH OF CONTRACT

38. Shaw realleges paragraphs 1 through 37 as if fully set forth herein.

39. The essential elements of a breach of contract claim are (1) a valid contract; (2) a breach; (3) proximate cause; and (4) damage. *McLamb v. T.P., Inc.*, 173 N.C. App. 161, 166, 619 S.E.2d 577, 580 (2005), *disc. rev. denied*, 360 N.C. 290 (2006).

40. "The basic legal relation between a student and a private university or college is contractual in nature." *Ryan v. Univ. of N.C. Hosps.*, 128 N.C. App. 300, 302, 494 S.E.2d 789, 791 (1998).

41. "To assert a legally enforceable contract against a university, the student must point to an identifiable contractual promise that the University failed to honor." *Herrera, et. al., v. Charlotte School of Law, LLC*, 17 CVS 1965, 2018 NCBC 15, 2018 WL 1902556, at *9 (internal quotations omitted).

42. A breach of contract action will survive when the student's claim includes "identifiable contractual promises that the University failed to honor… and the court can

11

make an objective assessment of whether the institution made a good faith effort to perform on its promise without inquiring in to the nuances of educational processes." *Id*. (*citing Ryan*, 128 N.C. App. at 302, 494 S.E.2d at 791) (internal quotations omitted); *see also McFadyen v. Duke Univ.*, 786 F.Supp.2d 887, 983 (M.D.N.C. Mar. 31, 2001) (allowing a breach of contract claim to proceed on Plaintiff's allegation that Duke failed to follow procedures for imposing discipline under its Code of Conduct).

43. In consideration of the fees and expenses paid by Shaw, Elon University made specific promises that it published in its Student Code of Conduct, including, but not limited to, those specifically discussed in paragraphs 3, 4, 5, 6, 7, 16, 17, 23, 28. These promises include that Elon University will conduct all student conduct process with fairness to all, that potential code of conduct violations will be handled expeditiously and thoroughly, that consideration will be given to all available and credible evidence relevant to the case, that appropriate consideration will be extended to all students, and that consistency in similar situations is a priority.

44. Elon University breached its contractual promises by failing to follow its procedures as applied to Shaw, including following the timeline that it established for investigating and adjudicating student conduct matters, considering all relevant and credible evidence, applying its procedures consistently, and adhering to its tenant of "fairness to all."

45. Elon University breached its contractual promises to Shaw by failing to make a decision based on a preponderance of the evidence.

46. Instead of fulfilling its contractual obligations, upon information and belief, Elon University issued a lesser disciplinary suspension to the son of a large financial donor who had assaulted three students, including two females.

47. Shaw suffered damages as a result of Elon University's breach of contract in an amount to be determined by the trier of fact.

48. Shaw has completed only three semesters of education at Elon University and is therefore not entitled to a degree with this amount of education. Thus, he has lost the funds spent on his education to date.

49. Shaw had to move back to Massachusetts upon his disciplinary suspension and incurred costs associated with moving.

50. Shaw suffered damage to his reputation as a result of his disciplinary suspension.

51. Shaw has had difficulty with admissions to other colleges and universities as a result of his disciplinary suspension.

52. No matter the outcome of this case, Shaw will forever have to explain the gap in his educational record to future employers.

53. But for Elon University's breach of contract, Shaw would not have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE Shaw prays this Court:

1. For damages in an amount to be determined at trial to exceed $75,000;

2. For costs of this action; and

3. For such other and further relief that this Court deems just and proper.

Respectfully submitted this 17th day of September, 2018.

/S/ LAURA BETH WALLER
Laura Beth Waller
N.C. Bar No. 41677
Pierce Law Group, PLLC
9121 Anson Way, Ste 200
Raleigh, NC 27615
P: (919) 584-5547
F: (919) 887-7267
lbwaller@piercelaw.com

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SAMUEL SHAW,<br><br>   Plaintiff,<br><br>v.<br><br>ELON UNIVERSITY,<br><br>   Defendant. | Civil No. 1:18-CV-00557-WO-JEP<br><br>VERIFICATION OF SAMUEL SHAW |

**VERIFICATION**

I, Samuel Shaw, being first duly sworn, depose and say that I am the Plaintiff herein, that I have read the foregoing Amended Complaint and know the statements therein to be true of my own personal knowledge. I affirm under the penalties of perjury that the forgoing allegations are true and accurate to the best of my knowledge, information and belief except for those stated to be of my information and belief.

This the 11 day of August, 2018.

Samuel Shaw

_____
Signature

Page 1  VERIFICATION [1:18-CV-00557-WO-JEP]

Pierce Law Group, PLLC
9121 Anson Way, Ste 200
Raleigh, NC 27615
(919) 584-5556

STATE OF _Massachusetts_

COUNTY OF _United States_ of America

Subscribed and affirmed before me this __11__ day of _August_, 2018.

_(signature: Annette J Coyer)_

Notary Public

My Commission expires: _3-8-2024_

*[Notary seal: ANNETTE J COYER, Notary Public, COMMONWEALTH OF MASSACHUSETTS, My Commission Expires March 8, 2024]*

Page 2    VERIFICATION [1:18-CV-00557-WO-JEP]

Pierce Law Group, PLLC
9121 Anson Way, Ste 200
Raleigh, NC 27615
(919) 584-5556

Case 1:18-cv-00557-WO-JEP   Document 14   Filed 09/17/18   Page 12 of 13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Amended Complaint was filed with the Clerk of the Court on September 17, 2018, using the CM/ECF system, which will send notification of such filing to the following: <u>Dan McCord Hartzog, Jr. and Katherine Marie Barber-Jones, Attorneys for Defendant.</u>

/S/ LAURA BETH WALLER
Laura Beth Waller
N.C. Bar No. 41677
Pierce Law Group, PLLC
9121 Anson Way, Ste 200
Raleigh, NC 27615
P: (919) 584-5547
F: (919) 887-7267
lbwaller@piercelaw.com

Attorney for Plaintiff
