UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:18-cv-00557

| | |
|---|---|
| SAMUEL SHAW, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) **BRIEF IN SUPPORT OF MOTION** |
| | ) **TO DISMISS PLAINTIFF'S** |
| ELON UNIVERSITY, | ) **AMENDED COMPLAINT** |
| | ) |
| Defendant. | )<br>)<br>) |

NOW COMES Defendant, by and through its undersigned counsel, and hereby submits this brief in support of its Motion to Dismiss Plaintiff's Amended Complaint (DE 15), filed concurrently.

## STATEMENT OF THE CASE

Plaintiff filed this lawsuit in Alamance County Superior Court on June 8, 2018, asserting a claim for breach of contract and requesting injunctive relief. (DE 2). On June 26, 2018, Defendant removed the case to the Middle District of North Carolina pursuant to 28 U.S.C. 1332, 1441, and 1446. (DE 1). By consent of the parties and leave of the Court, Plaintiff filed an Amended Complaint on September 17, 2018. (DE 14). On September 20, 2018, Defendant timely filed a Motion to Dismiss (DE 15), and hereby

submits this brief in support.

## STATEMENT OF RELEVANT ALLEGED FACTS

Defendant disputes the facts alleged by Plaintiff and contends that the procedures provided to Plaintiff were fair and reasonable and applied consistently to all students. However, for purposes of the instant motion, Defendant must take the facts set forth below, as alleged by Plaintiff, as true.

Plaintiff is a former student at Elon University (Amended Complaint, DE 14 ¶ 1) and attended a campus event on October 20, 2017 (*Id.* ¶ 8). Plaintiff left the event by bus and was picked up from the bus stop by Nick Marano ("Marano"). (*Id.* ¶ 9). Marano received a telephone call from Mr. Nate Joslin ("Joslin"), requesting a ride for an unidentified individual who was "intoxicated, belligerent, and had allegedly assaulted two female students." (*Id.* ¶ 10). Plaintiff, Marano, and Mr. Andrew Dewdney ("Dewdney") drove to Joslin's location and upon arrival, observed the unidentified individual physically assault Joslin, who fell to the ground and began bleeding from the face. (*Id.* ¶¶ 12-13). Plaintiff got out of Marano's vehicle and tackled the unidentified individual and struck him, believing him to be an imminent threat. (*Id.* ¶ 14). Plaintiff recognized the unidentified individual as Mr. Spencer Schar ("Schar") (*Id.* ¶ 15). Schar was assisted to the vehicle and

driven home. (*Id.* ¶ 17). A subsequent investigation by the Elon Police Department determined that Plaintiff had acted in self-defense. (*Id.* ¶ 18).

Elon University published a Student Handbook and Code of Conduct that outlined its policies and procedures as it relates to student conduct matters, with Section 6 outlining the Formal Conduct Procedures. (*Id.* ¶¶ 2, 4; *see also* DE 15-1, "The Honor System, Code of Conduct, and Processes"). Subsection A states that Elon University's handling of a potential code of conduct violation should be "expeditious[] and thorough[]," giving consideration to all available and credible relevant information. (DE 14 ¶ 5). Subsection E sets forth a three-step process for student conduct violations, which includes (1) a preliminary inquiry; (2) a student conduct conference; and (3) a formal hearing. (*Id.* ¶ 7).

On October 30, 2017, Randall Williams ("Williams"), Director of Student Conduct at Elon University, began a preliminary investigation into Plaintiff's actions by interviewing Schar, along with his mother. (*Id.* ¶¶ 21, 24). Schar did not identify Plaintiff or his involvement in the events of October 20, 2017 at that interview. (*Id.* ¶ 22). On or about November 6, 2017, Schar learned Plaintiff's identity and provided it to Williams via email. (*Id.* ¶ 25).

3

The preliminary inquiry begins the investigation into a Social Code of Conduct violation and typically takes one to seven business days to complete. (*Id.* ¶¶ 19-20). At the conclusion of the inquiry, the decision may be made to move forward with the formal process by identifying possible code violations and sending a notification to the student to meet for a student conduct conference. (*Id.* ¶ 20).

Plaintiff was notified on November 28, 2017 that Williams had set a student conduct conference (*Id.* ¶ 26), which was subsequently held on December 4, 2017 (*Id.* ¶ 28). At that conference, Plaintiff provided a statement of the events of October 20, 2017. (*Id.* ¶ 29). Williams interviewed Dewdney and Marano on December 7, 2017, and the two students also provided statements of the events of the evening in question. (*Id.* ¶ 30).

The purpose of the student conduct conference is to review the potential charges and sanctions and give the student an opportunity to respond and provide additional information necessary to determine if and what policy violations may have occurred. (*Id.* ¶ 27). Potential outcomes of this conference include "[p]ostponing and setting charges and conducting a hearing until additional information has been gathered; [s]etting charges and engaging in a more comprehensive investigation before scheduling a hearing; [or] [s]etting charges and scheduling an administrative hearing…" (*Id.*)

4

Plaintiff was notified on December 7, 2017, that a student conduct hearing had been set (*id.* ¶ 31), and the hearing was held on December 14, 2017, via telephone (*id.* ¶ 33). Following the hearing, Williams completed a case resolution form indicating that Plaintiff was "responsible for fighting or acts of aggression and disorderly conduct." (*Id.* ¶ 34). Plaintiff was notified of these findings on the same day and was issued a disciplinary suspension for one calendar year on the basis of "severe injuries" to Schar. (*Id.* ¶ 35).

Per the Elon University Student Handbook, formal hearings are typically held within 30 days of an incident. (*Id.* ¶ 32). During the hearing, the hearing officer will ask questions regarding the incident and the student's behavior and will consider all credible evidence related to the charges. (*Id.*) If necessary, the conclusion of the hearing may be postponed so that the hearing officer may conduct further investigation into the matter. (*Id.*) A "responsible" or "not responsible" ruling is made for each potential violation of the code of conduct and sanctions assigned as necessary. (*Id.*) The hearing officer is to consult with the dean of students prior to rendering a final sanction of suspension or permanent separation. (*Id.*)

Plaintiff appealed his suspension to the Elon University Appeal Board on December 21, 2017, and the Board upheld the suspension. (*Id.* ¶ 35).

In his Complaint, Plaintiff alleges that his conduct file held no evidence of the severity of Schar's injuries, no statement from Schar regarding the incident that is the subject of this suit, and no statements from the three other material witnesses. (*Id.* ¶ 36). Plaintiff also contends that Schar received a lesser disciplinary suspension than did Plaintiff. (*Id.* ¶ 37). Plaintiff contends that these alleged procedural failures constituted a breach of Elon's contractual promises to him.

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO ESTABLISH A VALID AND ENFORCEABLE CONTRACT; THUS, PLAINTIFF'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED.

To meet the elements of a *prima facie* breach of contract claim, a plaintiff must establish: (1) the existence of a valid contract; and (2) a breach of the terms of the contract. *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007). Plaintiff's breach of contract claim fails because he has not alleged the existence of a valid contract.

Plaintiff alleges that, in consideration for the fees and expenses he paid to the University, the University made specific promises to him by and through the Student Handbook. (DE 14 ¶ 43). However, North Carolina courts have repeatedly established that student handbooks are not contracts in this jurisdiction.

### A. Student Handbooks are not considered contracts under North Carolina law.

In *Love v. Duke Univ.*, 776 F. Supp. 1070, 1075 (M.D.N.C. 1991), *aff'd*, 959 F.2d 231 (4th Cir. 1992), the Court held that Duke University's academic bulletin was not a contract between students and the university. Plaintiff alleged various claims arising out of his contention that the bulletin constituted a binding contract. The Court rejected this argument, stating as follows:

> The court is of the opinion that no contract existed between Love and Duke University. Particularly, the academic bulletin is not a binding contract.

*Id.*, 776 F. Supp. at 1075. The Fourth Circuit adopted this opinion and its reasoning in affirming the decision. 959 F.2d 231.

Likewise, in *Mercer v. Duke Univ.*, No. 1:97CV959 (M.D.N.C. 2000), the Court dismissed a student's claim alleging a contract existed based on terms in student handbooks that were not explicitly included or incorporated into a contract. The Court analogized such claims to employment claims, in which courts have held that handbooks are part of the contract between employer and employee only when they are explicitly included by reference in the employee contract. *Id.* (*citing Black v. W. Carolina Univ.*, 109 N.C. App. 209, 213, 426 S.E.2d 733, 736 (1993)).

In *Giuliani v. Duke University*, No. 1:08CV502, 2010 WL 1292321 (M.D.N.C. 2010), the Court rejected a student's claim alleging that a contract existed based upon the terms found in a student handbook, where those terms had not been explicitly included or incorporated into a contract. 2010 WL 1292321, at *7-8. In *Giuliani*, the student plaintiff was indefinitely suspended from the golf team by a new coach, which suspension was upheld after an investigation by the university. *Id.* at *2. The plaintiff argued that a contractual relationship existed between him and the University, initiated by the prior coach's recruitment offer, which became a binding contract once the student agreed to attend Duke, paid tuition, and passed up opportunities at other universities. *Id.* at *5. Plaintiff alleged that his student-athlete handbooks and the Duke bulletin reflected written contract terms. *Id.* at *7. However, relying upon *Love* and *Mercer*, *supra*, the *Giuliani* court held that Plaintiff had failed to produce or allege a valid underlying contract that expressly incorporated the terms of the University's academic bulletin, and that his breach of contract claims should therefore be dismissed. *Id.* at 8.

Most recently, in *Chandler v. Forsyth Technical Community College*, 294 F. Supp. 3d 445 (M.D.N.C. 2018), the Middle District court recognized that, under North Carolina law, a college's policies and procedures as outlined in student handbooks do not constitute a binding agreement
8

between the college and its students, and a college's failure to follow its disciplinary procedures does not constitute a breach of contract. 294 F. Supp. 3d at 458-49. In that case, the Middle District held that a student must establish a separate contract between the student and the college incorporating the student handbook in order for the terms of the handbook to become a binding contract. *Id.* The court concluded that, "Plaintiff has not alleged a contract between herself and FTCC expressly incorporating FTCC's policies and procedures as outlined in the Student Academic Planner and Handbook. Consequently, even taking reasonable inferences in Plaintiff's favor, the Complaint cannot be construed to allege the existence of a contract in this case." *Id.* at 459.

Here, Plaintiff does not allege the existence of any specific writing intended to serve as a contract that incorporated the Student Handbook by reference. Plaintiff's contention that the Student Handbook itself is a binding contract is meritless and is contradicted by relevant case law. As such, Plaintiff has failed to establish that a valid contract between himself and the University exists, and Plaintiff's breach of contract claims should be dismissed.

### B. The Student Handbook does not purport to be a binding contract.

The Student Handbook does not purport to be a binding agreement

between students and the University. The Student Handbook states, in part, as follows:

> The Student Handbook contains critical information associated with student conduct as well as information regarding campus policies and regulations. The Student Handbook also contains helpful information and links to information regarding campus resources and student life, student organizations, and campus events. Updates to all sections of the Student Handbook may be posted periodically. It is the responsibility of all Elon University students to become familiar with campus policies and procedures and to watch for updates as instructed on E-Net.

(DE 15-1 at 1)[1].

Further, in Section 6, the Formal Conduct Procedures section, the Student Handbook states as follows:

> It should be noted that not all situations are of the same severity or complexity. Thus, these procedures are flexible, and are not exactly the same in every situation, though consistency in similar situations is a priority.

(*Id.* at 35; *see also* DE 14 ¶ 6).

As set forth above, the University reserves the right to change the terms of the Student Handbook without prior notice to students, and

---

[1] Because Plaintiff's breach of contract claim relies on the terms of the Student Handbook, the Court may consider this document without converting Defendant's motion into one for summary judgment. Courts are permitted to consider the written contract in a 12(b)(6) motion on a claim for breach of contract. *See e.g., Erie Ins. Exchange v. Builders Mut. Ins. Co.,* -- N.C. App. --, 742 S.E.2d 803, 808 (2013) (holding that consideration of a contract that is the subject of the complaint does not convert a Rule 12 motion into one for summary judgment). Plaintiff's Amended Complaint states that the Student Handbook is attached as Exhibit 1, but no attachment was filed with Plaintiff's Amended Complaint. (*See* DE 14 ¶ 2).

specifically states that the procedures are "flexible." It is well settled that no contract is formed without an agreement to which at least two parties manifest an intent to be bound. *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007). As a matter of North Carolina law, there is no valid contract where its terms make performance optional. *Bowman v. Hill*, 45 N.C. App. 116, 117-18, 262 S.E.2d 376, 377 (1980). Because the University reserves the right to update, and therefore change, the terms of the Student Handbook at any time, and because the procedures set forth are specifically stated to be flexible, well-established North Carolina law establishes that the Student Handbook cannot be considered a binding contract.

Likewise, courts in other jurisdictions have held that such a reservation clause renders a student handbook's obligations "too indefinite" to constitute a binding contract. *See e.g., Millien v. Colby Coll.*, 2005 ME 66, 874 A.2d 397, 402 (2005) ("Under Maine law, a reservation to either party of an unlimited right to determine the nature and extent of his performance renders his obligation too indefinite for legal enforcement, making it, as it is termed, merely illusory. Thus, the [trial] court did not err in concluding that the handbook was not a binding contract...."); *Pacella v. Tufts Univ. Sch. of Dental Med.*, 66 F. Supp. 2d 234, 241 (D. Mass. 1999) (terms of student handbook "not contractually binding on Tufts" because university retained

the unilateral right to make changes to its handbook without notice"); *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 337 (E.D. Va. 2005) (performance by the university per the terms of a catalog were optional because of the catalog's disclaimer that the university may change its terms at any time); *Abbas v. Woleben*, No. 3:13CV147, 2013 WL 5295672, at *4 (E.D. Va. 2013) (handbook that could be changed at any time did not establish a contract with student dismissed for academic performance); *Doe v. Washington & Lee Univ.*, No. 6:14-cv-00052, 2015 WL 4647996, at *11 (W.D. Va. 2015) ("Courts applying Virginia law routinely reject the notion that a 'Student Handbook' creates a mutuality of engagement where the terms of the handbook are subject to change.").

Because the Student Handbook allows for updates to be made without prior notice to students, and because the procedures set forth are flexible, it cannot be considered a binding contract. As a result, the Student Handbook, by its own terms, is not a contract between Plaintiff and the University and cannot serve as the basis of Plaintiff's breach of contract claim. As such, Plaintiff's breach of contract claim is subject to dismissal.

4834-0923-9411, v. 1

### C. The provisions of the Student Handbook relied on by Plaintiff are not sufficiently definite and certain to be considered an enforceable contractual provision.

Even assuming *arguendo* that the terms of the Student Handbook could be considered a contract, the provisions relied on by Plaintiff are not enforceable contractual provisions. To assert a legally enforceable contract against a university, "the student 'must point to an identifiable contractual promise that the University failed to honor' " that can be judged objectively. *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 219, 768 S.E.2d 582, 592 (2015) (*quoting Ryan v. Univ. of N. Carolina Hosps.*, 128 N.C. App. 300, 302, 494 S.E.2d 789, 791 (1998)). In order to be enforceable, the terms of a contract must be "sufficiently definite in order that a court may enforce it." *Brooks v. Hackney,* 329 N.C. 166, 170, 404 S.E.2d 854, 857 (1991).

The provisions of the Student Handbook pointed to by Plaintiff include the following alleged provisions: "all student conduct process are conducted with fairness to all, that potential code of conduct violations will be handled expeditiously and thoroughly, that consideration will be given to all available and credible evidence relevant to the case, that appropriate consideration will be extended to all students, and that consistency in similar situations is a priority." (DE 14, ¶ 43). As a matter of law, such provisions are not sufficiently definite as to establish an enforceable contractual provision. *See,*

*e.g., Grant v. Mount Vernon Mills, Inc.,* 370 S.C. 138, 634 S.E.2d 15, 21 (2006) (holding that the policy statement of Mount Vernon to be "fair and just" did not create enforceable contract); *see also Doe v. Trs. of the Univ. of Pennsylvania*, No. CV 16-5088, 2017 WL 4049033, at *9 (E.D. Pa. 2017) (reading requirement of "fair" hearings and investigations in student discipline process to mean hearings and investigations that complied with the more specific provisions of the Disciplinary Procedures concerning hearings and investigations, and did not intend to impose additional, unspecified "fairness" requirements); *Lassiter v. Bank of N. Carolina*, 146 N.C. App. 264, 269, 551 S.E.2d 920, 924 (2001) (promise to "look after" plaintiffs and make sure work is "done right" was not sufficiently definite to constitute an enforceable contractual provision.).

While Elon University makes every effort to provide a fair and thorough disciplinary process, contractual provisions promising "fairness," handling matters "expeditiously and thoroughly," and extending "appropriate consideration," are not sufficiently definite as to establish enforceable contractual provisions. As a result, Plaintiff's breach of contract claims based on these Handbook sections should be dismissed.

4834-0923-9411, v. 1

Case 1:18-cv-00557-WO-JEP   Document 16   Filed 09/20/18   Page 14 of 18

# CONCLUSION

Because Plaintiff has failed to plead facts that would establish the existence of a valid and enforceable contract between Plaintiff and Defendant, which is a required element of a breach of contract claim, Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted. Therefore, Defendant Elon University respectfully requests that the Court GRANT Defendant's motion to dismiss and DISMISS Plaintiff's Amended Complaint with prejudice.

This the 20th day of September, 2018.

CRANFILL SUMNER & HARTZOG LLP

/s/ Dan M. Hartzog Jr.
DAN M. HARTZOG
State Bar No. 5648
DAN M. HARTZOG JR.
N.C. State Bar No. 35330
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
CRANFILL SUMNER & HARTZOG LLP
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: (919) 828-5100
Facsimile: (919) 828-2277
E-mail: dmh@cshlaw.com
E-mail: dhartzogjr@cshlaw.com
E-mail: kbarber-jones@cshlaw.com

# CERTIFICATE OF COMPLIANCE

This Brief in Support complies with the word count limit set forth in Local Rule 7.3(d). The number of words in this Brief in Support, exclusive of the caption, signatures, and required certificates, does not exceed 6,250 words, according to the word count function of the software used to prepare this Brief.

/s/ Dan M. Hartzog Jr.
DAN M. HARTZOG JR.
N.C. State Bar No. 35330

16

4834-0923-9411, v. 1

Case 1:18-cv-00557-WO-JEP   Document 16   Filed 09/20/18   Page 16 of 18

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:18-cv-557

| | | |
|---|---|---|
| SAMUEL SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| v. | ) | |
| | ) | |
| ELON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

I hereby certify that on September 20th, 2018, I electronically filed the foregoing **Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint** with the Clerk of Court using the CM/ECF system, and I have served the following non-CM/ECF participant via U.S. Mail:

Laura Beth Waller
Pierce Law Group, PLLC
9121 Anson Way, Ste 200
Raleigh, NC 27615
Email: lbwaller@piercelaw.com

/s/ Dan M. Hartzog Jr.
DAN M. HARTZOG
State Bar No. 5648
DAN M. HARTZOG JR.
N.C. State Bar No. 35330
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
CRANFILL SUMNER & HARTZOG LLP

17

4834-0923-9411, v. 1

Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: (919) 828-5100
Facsimile: (919) 828-2277
E-mail: dmh@cshlaw.com
E-mail: dhartzogjr@cshlaw.com
E-mail: kbarber-jones@cshlaw.com