IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SAMUEL SHAW,                    )
                                )
            Plaintiff,          )
                                )
        v.                      )        1:18CV557
                                )
ELON UNIVERSITY,                )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 15.) Defendant has filed a brief in support of its motion, (Doc. 16), Plaintiff has responded in opposition, (Doc. 17), and Defendant has replied, (Doc. 20). For the reasons that follow, Defendant's Motion to Dismiss will be granted.

## I.   BACKGROUND

This case involves a university's disciplinary process in suspending a student following a physical altercation with another student. The facts alleged, construed in the light most favorable to Plaintiff, are as follows.

Plaintiff Samuel Shaw, a citizen and resident of Massachusetts, was a student at Defendant Elon University ("Elon"). (Amended Complaint ("Am. Compl.") (Doc. 14) at 1 ¶ 1,

at 2 ¶ 1.)[1] Elon University is a private university in North

Carolina. (See id. at 1 ¶ 2.)

### A. The Student Handbook

Elon's Division of Student Life publishes an annual Student

Handbook, which outlines Elon's campus policies, procedures, and

regulations. (See id. at 2 ¶ 2; see also Def.'s Motion to

Dismiss, Ex. 1, Student Handbook (Doc. 15-1).)[2] Sections 5 and 6

of the Student Handbook outline Elon's Code of Conduct and

Formal Conduct Procedures, respectively. (See Student Handbook

(Doc. 15-1) at 14-51.) Elon's Code of Conduct provides that

"[p]rocedures and rights in the student conduct process are

conducted with fairness to all." (Am. Compl. (Doc. 14) ¶ 3;

Student Handbook (Doc. 15-1) at 14.) Elon's Formal Conduct

Procedures set forth Elon's student-disciplinary procedures for

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] Defendant attached the relevant portions of the Student Handbook to its Motion to Dismiss. (See Student Handbook (Doc. 15-1).) This court will consider the Student Handbook without converting Defendant's motion to one for summary judgment. See Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015) (alteration, internal citations and quotation marks omitted) ("Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity.").

violations of the Code of Conduct and provide that potential
violations of the Code of Conduct "should be handled
expeditiously and thoroughly." (Am. Compl. (Doc. 14) ¶ 5;
Student Handbook (Doc. 15-1) at 35.) The Formal Conduct
Procedures are "flexible"; they prioritize consistent
disciplinary outcomes in similar situations but also note "that
not all situations are of the same severity or complexity." (Am.
Compl. (Doc. 14) ¶¶ 5-6; Student Handbook (Doc. 15-1) at 35.)
The Formal Conduct Procedures also state that, "[c]onsideration
will be given to all available and credible information relevant
to" a student's potential violation of Elon's Code of Conduct.
(Am. Compl. (Doc. 14) ¶ 5; Student Handbook (Doc. 15-1) at 35.)
The Formal Conduct Procedures outline a three-step process for
student disciplinary proceedings, which Elon "typically"
follows: (i) a preliminary inquiry, (ii) a student conduct
conference, and (iii) a formal hearing. (Am. Compl. (Doc. 14)
¶ 7; Student Handbook (Doc. 15-1) at 35, 40-42.) Formal hearings
conclude "with the rendering of a 'Responsible' or 'Not
Responsible' decision . . . based on the preponderance of the
evidence and appropriate sanctions will be assigned if
warranted." (Am. Compl. (Doc. 14) ¶ 32; Student Handbook (Doc.
15-1) at 42.) If a hearing officer's recommended sanction is
disciplinary suspension, then the hearing officer is to consult

- 3 -

with Elon's Dean of Students prior to issuing a final decision. (Am. Compl. (Doc. 14) ¶ 32; Student Handbook (Doc. 15-1) at 42.) The Formal Conduct Procedures also set forth applicable timelines: the preliminary inquiry "typically" takes one to seven business days, (Student Handbook (Doc. 15-1) at 40); charges are "usually" set, and an administrative hearing scheduled, within five business days of the student conduct conference, (id. at 42); and "most" formal hearings are conducted within thirty days of the potential violation. (Id.) Fighting and acts of physical aggression violate Elon's Code of Conduct. (See id. at 26.)

### B. <u>The October 20, 2017 Incident</u>

On the night of October 20, 2017, Plaintiff attended an Elon sorority event. (See Am. Compl. (Doc. 14) ¶ 8.) He consumed no alcohol, left the event by bus, and was picked up at the bus drop-off location by Nick Marano, who was serving as a designated driver for the evening. (Id. ¶ 9.) Shortly thereafter, Plaintiff's friend, Nate Joslin, called Marano and asked him to pick up an intoxicated individual – who Plaintiff later identified as Spencer Schar, the son of a significant financial donor to Elon – who had allegedly assaulted two female students. (Id. ¶¶ 10-11, 15-16.) Marano, accompanied by Plaintiff and another individual, Andrew Dewdney, drove to pick

- 4 -

up Schar. (Id. ¶ 12.) Upon arriving at Schar's location, Plaintiff observed Schar punch Joslin while he was not looking, causing Joslin to drop to the ground bleeding. (Id. ¶¶ 12-13.) Believing Schar to be a threat to Joslin and the two female students Schar had allegedly assaulted, Plaintiff exited Marano's vehicle, tackled Schar, and then struck him. (Id. ¶ 14.) Following the altercation, the group subdued Schar, and Marano drove him home. (See id. ¶ 17.)

Plaintiff alleges that the Elon Police Department investigated the incident and found that Plaintiff had acted in self-defense. (Id. ¶ 18.)

###    C.    Elon's Disciplinary Process

On October 30, 2017, Randall Williams, Elon's Director of Student Conduct, began a preliminary investigation of the incident on October 20, 2017. (Id. ¶ 24.) Williams first interviewed Schar and his mother. (See id. ¶ 21.) During that interview, Schar did not implicate Plaintiff in the altercation. (See id. ¶ 22.) Schar provided Plaintiff's name to Williams on or about November 6, 2017. (Id. ¶ 25.) On November 28, 2017, Plaintiff was notified that Williams had scheduled a student conduct conference. (Id. ¶ 26.) On December 4, 2017, Williams held Plaintiff's student conduct conference, during which Plaintiff provided a statement about the incident on October 20,

- 5 -

2017. (Id. ¶¶ 28-29.) On December 7, 2017, Williams interviewed Marano and Dewdney about the incident, and they both provided statements. (Id. ¶ 30.) Plaintiff was notified later that day that a formal hearing had been scheduled. (See id. ¶ 31.) On December 14, 2017, at 11:00 a.m., Williams began Plaintiff's formal hearing via telephone. (Id. ¶ 33.) At 11:17 a.m., Williams entered a case resolution form, indicating that Plaintiff was responsible for "fighting or acts of aggression and disorderly conduct." (Id. ¶ 34.)

Sometime between December 14, 2017 and December 21, 2017, Elon suspended Plaintiff. (See id. ¶¶ 33-35.)[3] It appears that Elon also suspended Schar, allegedly for a shorter duration than Plaintiff. (Am. Compl. (Doc. 14) ¶ 37.) Plaintiff appealed his disciplinary suspension to Elon's Appeal Board, which upheld the suspension. (Id. ¶ 35.)

Plaintiff alleges that inspection of his disciplinary conduct file revealed no evidence about Schar's injuries and no statement from Schar or any of the material witnesses about the events of October 20, 2017. (See id. ¶ 36.)

---

[3] Plaintiff does not allege in the Amended Complaint the details of his disciplinary suspension. In his original complaint, he alleged that Elon suspended him for one calendar year due to Schar's "severe injuries." (Doc. 2 ¶ 35.)

- 6 -

D.   **Procedural History**

Plaintiff originally filed this action in North Carolina state court on June 8, 2018, and Defendant removed it to this court on June 26, 2018. (See Doc. 1-1 at 1; Doc. 1 at 1.) On September 17, 2018, Plaintiff filed his Amended Complaint. (See Am. Compl. (Doc. 14).)

Plaintiff's single claim is for breach of contract. (Id. ¶¶ 38-53.) Plaintiff alleges that Elon made the specific promises set forth in the Code of Conduct in consideration of the fees and other expenses paid by Plaintiff to Elon. (Id. ¶ 43.) Elon allegedly breached those contractual obligations by failing to follow its Formal Conduct Procedures during Plaintiff's disciplinary proceedings, (id. ¶¶ 44-45), and by subjecting Schar to a shorter disciplinary suspension for allegedly more egregious behavior, (see id. ¶ 46). Specifically, Plaintiff alleges that Defendant breached its contractual promises by not "following the timeline that it established for investigating and adjudicating student conduct matters, considering all relevant and credible evidence, applying its procedures consistently, and adhering to its tenant [sic] of 'fairness to all.'" (Id. ¶ 44.)

On September 20, 2018, Defendant moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6). (Doc. 15 at 1.) Defendant argues primarily that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted because Plaintiff fails to allege a valid and enforceable contract. (See (Doc. 16) at 6-14.)

## II.  **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Iqbal, 556 U.S. at 678. This court
will not "ignore a clear failure in the pleadings to allege any
facts which set forth a claim." Estate of Williams-Moore, 335 F.
Supp. 2d at 646.

When sitting in diversity jurisdiction, as here, this court
applies the substantive state law in accordance with the highest
court of the state in which the suit was brought. Liberty Mut.
Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir.
1992). If the highest state court has not addressed a relevant
issue, then this court looks to the state's intermediate
appellate court decisions, though "such decisions may be
disregarded if the federal court is convinced by other
persuasive data that the highest court of the state would decide
otherwise." Id. (citations and internal quotation marks
omitted). This court will therefore apply North Carolina law to
the breach of contract claim here, in accordance with North
Carolina Supreme Court precedent or, in the absence of such
precedent, in predicting how the Supreme Court of North Carolina
would rule. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt
Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005) (citations
omitted).

## III. **ANALYSIS**

The issue presented here is a narrow one: whether the policies, procedures, alleged obligations, and tenets outlined in Elon's Student Handbook plausibly establish an enforceable contract. Taking the allegations in the Amended Complaint as true, this court finds that they do not. The Amended Complaint, therefore, will be dismissed.

Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000) (citation omitted). "No contract is formed without an agreement to which at least two parties manifest an intent to be bound." Parker v. Glosson, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (N.C. Ct. App. 2007) (certain citations omitted) (citing Croom v. Goldsboro Lumber Co., 182 N.C. 217, 220, 108 S.E. 735, 737 (1921)). A contract does not exist if "one party simply believes that a contract exists, but there is no meeting of the minds." Elliott v. Duke Univ., Inc., 66 N.C. App. 590, 595, 311 S.E.2d 632, 636 (1984) (citing Brown v. Williams, 196 N.C. 247, 145 S.E. 233 (1928)). Further, "[i]f any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." Croom, 182 N.C. at 217, 108

- 10 -

S.E. at 737. North Carolina courts have consistently held that "a contract must be sufficiently definite in order that a court may enforce it." See, e.g., Brooks v. Hackney, 329 N.C. 166, 170, 404 S.E.2d 854, 857 (1991).

It appears that the North Carolina Supreme Court has yet to squarely address the issue presented here, but most North Carolina lower courts and federal courts applying North Carolina law have found that university handbooks, bulletins, guidelines, codes of conduct, manuals, and the like are not independently enforceable contracts. See, e.g., Black v. W. Carolina Univ., 109 N.C. App. 209, 213, 426 S.E.2d 733, 736 (N.C. Ct. App. 1993) (holding that the University of North Carolina Code was not part of a professor's employment contract where not expressly incorporated into the contract; affirming lower court's entry of summary judgment for defendant on plaintiff's breach of contract claim); Love v. Duke Univ., 776 F. Supp. 1070, 1075 (M.D.N.C. 1991) (finding that Duke's University Bulletin was not a binding contract). Rather, terms found in such unilaterally produced documents must be explicitly included in or incorporated into a valid and enforceable contract for those terms themselves to become enforceable obligations. See, e.g., Montessori Children's House of Durham v. Blizzard, 244 N.C. App. 633, 640-41, 781 S.E.2d 511, 517 (N.C. Ct. App. 2016) (rejecting a breach of

- 11 -

contract claim based on "statements contained on a private school's webpage or in its advertisements that are not expressly incorporated by reference into a contract for admission"); Supplee v. Miller-Motte Bus. Coll., Inc., 239 N.C. App. 208, 219-20, 768 S.E.2d 582, 592 (N.C. Ct. App. 2015) (affirming judgment in favor of business student on breach of contract claim against business school for failure to follow procedures in its student catalog where the catalog was explicitly incorporated into two separate enrollment agreements signed by the student); Williams v. Livingstone Coll., Inc., No. COA14-696, 2015 WL 660799, at *4 (N.C. Ct. App. Feb. 7, 2015) (holding that the plaintiff-college relationship was contractual and inclusive of a college's catalog setting forth graduation requirements where plaintiff executed a contract with the college that incorporated such catalog); Guiliani v. Duke Univ., No. 1:08CV502, 2010 WL 1292321, at *8 (M.D.N.C. Mar. 30, 2010) (dismissing breach of contract claim premised on Duke's student handbooks and policy manuals that were not alleged to have been incorporated into an enforceable contract between the plaintiff and Duke).

This court recently revisited the question of whether the policies and procedures outlined in a college's handbook form a binding contract between a student and the college. See Chandler

- 12 -

v. Forsyth Tech. Cmty. Coll., 294 F. Supp. 3d 445, 458-59 (M.D.N.C.), aff'd, 739 F. App'x 203 (4th Cir. 2018). After summarizing the state of the law in North Carolina on the issue, this court concluded that, absent an allegation of an enforceable contract explicitly including or incorporating policies or procedures outlined in a college handbook, a student cannot premise a breach of contract claim on those policies and procedures. See id. (citing Samost v. Duke Univ., 226 N.C. App. 514, 518-20, 742 S.E.2d 257, 260-61 (N.C. Ct. App. 2013); Ryan v. Univ. of N.C. Hosps., 128 N.C. App. 300, 301, 494 S.E.2d 789, 790 (N.C. Ct. App. 1998); Guiliani, 2010 WL 1292321, at *8; Mercer v. Duke Univ., No. 1:97CV959, slip op. at 14 (M.D.N.C. Sept. 28, 2000); Love, 776 F. Supp. at 1075). This court's research reveals no significant updates to North Carolina caselaw in the interim between this court's decision in Chandler

and today's decision.[4]

Plaintiff alleges no contract between himself and Defendant that incorporates or includes any of the procedures and undertakings outlined in Elon's Student Handbook. Plaintiff has neither produced a copy of, nor alleged the existence of, a document or agreement that this court could plausibly interpret as an enforceable contract. The procedures set forth in the Student Handbook are unilateral and aspirational undertakings by Defendant. As a result, even construing the Amended Complaint in the light most favorable to Plaintiff, this court cannot find that Plaintiff plausibly alleges that the disciplinary procedures set forth in the Student Handbook are part of an enforceable contract.

Rather than alleging the existence of a specific, enforceable contract, Plaintiff alleges and argues in conclusive

---

[4] After this court's decision in Chandler, another district court in North Carolina denied a motion to dismiss a breach of contract claim premised on an alleged failure to follow a specifically identifiable contractual promise in a graduate school's appeal policy that allowed a student to continue coursework during the pendency of any appeal. Neal v. Univ. of N.C., No. 5:17-CV-00186-BR, 2018 WL 2027730, at *7 (E.D.N.C. May 1, 2018) (citing McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 983 (M.D.N.C. 2011), aff'd in part, rev'd in part, dismissed in part sub nom. Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012)). As this court will discuss herein, Plaintiff does not allege a specifically identifiable contractual promise, and this court does not find the court's decision in McFadyen, on which the court in Neal relied, particularly persuasive.

- 14 -

fashion that "[t]he basic legal relation between a student and a private university or college is contractual in nature." (Am. Compl. (Doc. 14) ¶ 40; Pl.'s Resp. (Doc. 17) at 3 & n.12.) As Defendant notes, however, Plaintiff misattributes this quotation to the North Carolina Court of Appeals in Ryan, 128 N.C. App. 300, 494 S.E.2d 789. (Def.'s Reply (Doc. 20) at 3-4.) Plaintiff's quotation is instead from the Seventh Circuit's decision in Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992), a case where the court applied Illinois law.[5] Even if there were some implied contractual relationship between Plaintiff and Elon, Plaintiff has not alleged that the implied contractual relationship incorporated Elon's undertakings set forth in the Student Handbook.

Despite the many cases rejecting a theory that a student handbook creates a contractual obligation as a matter of law, courts in three relatively recent cases have allowed a claim

---

[5] In Ryan, the North Carolina Court of Appeals favorably cited the Seventh Circuit's decision in Ross. See Ryan, 128 N.C. App. at 302, 494 S.E.2d at 791 (citing Ross, 957 F.2d at 411). But "[t]he North Carolina courts have expressly limited application of the Ryan holding to cases where there is an explicit, identifiable contractual promise." McClean v. Duke Univ., No. 1:17CV603, 2019 WL 1333421, at *11 (M.D.N.C. Mar. 25, 2019) (citing Blizzard, 244 N.C. App. at 641-42, 781 S.E.2d at 517). In Ryan, that explicit, identifiable contractual promise was in the form of a written medical residency contract. 128 N.C. App. at 301, 494 S.E.2d at 790. Here, Plaintiff alleges no similar contract.

- 15 -

premised on such a theory to survive a motion to dismiss. The courts in those cases found that the plaintiffs plausibly alleged a limited, enforceable contractual obligation arising from a process violation, as opposed to a substantive violation, under a university handbook. Plaintiff relies heavily on two of those cases: McFadyen, 786 F. Supp. 2d at 887, and Myers v. Bradford Preparatory School, Civil Action No. 3:17-CV-099-RJC-DCK, 2017 WL 6820203 (W.D.N.C. Oct. 19, 2017), R&R adopted by 2018 WL 325310 (W.D.N.C. Jan. 8, 2018). The third case is Neal, 2018 WL 2027730, which this court discussed supra at note 4.

In McFadyen, the district court allowed the plaintiffs' breach of contract claim against Duke to proceed on the limited basis of Duke's alleged failure to follow disciplinary procedures set forth in Duke's Student Bulletin and Code of Conduct. See 786 F. Supp. 2d at 983. The court first stated that, "courts in [the Middle District of North Carolina] have repeatedly concluded that a university's academic bulletins and policies cannot be the basis of a breach of contract claim unless . . . incorporated into the terms of a contract between the university and the student." Id. at 982 (collecting cases). But the court then stated:

> Although a breach of contract claim would not allow
> for review of the substance of the disciplinary
> proceedings, since that is a matter left to

- 16 -

educational discretion, a breach of contract claim
could potentially reach the limited inquiry of whether
Duke failed to follow promised procedures for imposing
discipline (particularly suspension) under the Code of
Conduct. See Havlik v. Johnson & Wales Univ., 509 F.3d
25, 34-35 (1st Cir. 2007) (noting that a student's
relationship to his university is based in contract,
and "if the university explicitly promises an appeal
process in disciplinary matters, that process must be
carried out in line with the student's reasonable
expectations"). Therefore, the Court will allow this
aspect of Plaintiffs' breach of contract claim to
proceed, but only against Duke and only on this
limited basis with regard to the failure to follow
promised procedures in the disciplinary process.
However, the Court will not entertain a substantive
challenge to Duke's disciplinary decision or otherwise
open up any type of "educational malpractice" claim.

Id. at 983. The district courts in Neal and Myers followed that

analysis. See Neal, 2018 WL 2027730, at *7; Myers, 2018 WL

325310, at *2.[6]

These cases do not persuade this court to hold in

Plaintiff's favor. In McFadyen, the court did not address or

explain how it concluded that a contractual provision was

formed, when it was formed, how it bound the parties, or whether

consideration existed to support the finding of a binding

--------

[6] The district court in Myers cautiously adopted the
magistrate judge's recommendation to deny the defendants' motion
to dismiss the plaintiffs' breach of contract claim premised on
a school's failure to follow disciplinary procedures in its
handbook. The district court found McFadyen "persuasive enough
to allow Plaintiffs' claim to survive at least until discovery
has been completed and dispositive motions have been filed." See
Myers, 2018 WL 325310, at *2.

- 17 -

contractual promise. This court cannot determine whether or how the court in McFadyen considered those issues or whether facts existed in that case which are not present here. In Myers, the district court relied on McFadyen to allow the plaintiffs' breach of contract claim to proceed, but the plaintiffs there had also specifically alleged that they "entered into two separate contracts with [the school] by signing agreements related to [the school's] Honor Code, Student Code of Conduct, and Student and Parent Handbook." 2017 WL 6820203, at *1, *4 (report and recommendation); see also Myers, 2018 WL 325310, at *2 (adopting report and recommendation). To the extent that the plaintiffs in Myers alleged an executed written contract that incorporated the unfollowed procedures, the decision is consistent with this court's analysis of North Carolina law.

Here, Plaintiff does not allege when he and Elon entered into a contract. Plaintiff does not allege that he signed any written agreement relating to the Student Handbook or that he signed any agreement at all. Plaintiff does allege that Elon made the "promises" in the Student Handbook "[i]n consideration of the fees and expenses paid by Shaw." (Am. Compl. (Doc. 14)

¶ 43.)[7] Nevertheless, even assuming arguendo that the North Carolina Supreme Court would agree with the court's reasoning in McFadyen, i.e., that a student handbook's disciplinary procedures could constitute a contractual obligation, this court is not persuaded the North Carolina Supreme Court would rule that way about Elon's Student Handbook. Elon's "promises" cannot plausibly be viewed independently or collectively as an enforceable contract that requires Elon to provide the disciplinary process exactly as described in the Student Handbook. Plaintiff has not plausibly alleged a provision evidencing Elon's intent to be bound, and Plaintiff fails to allege how certain provisions inure to his benefit. The language Elon employs in its Student Handbook is aspirational and cannot reasonably be interpreted as a guarantee.

Before addressing the Student Handbook's language, the court notes that Plaintiff received the disciplinary process set

---

[7] Although not necessary to this decision, this court notes that this allegation is not supported by specific facts sufficient to plausibly allege there was an exchange of consideration. Elon specifically reserved the right to modify the procedures in the Student Handbook at any time. (See Student Handbook (Doc. 15-1) at 1 ("Updates to all sections of the *Student Handbook* may be posted periodically.").)

forth in the Student Handbook.[8] Elon conducted a preliminary investigation. Plaintiff received notice of a student conduct conference, and one was held. Plaintiff received notice of a student conduct hearing, and one was held. Following the student conduct hearing, Plaintiff was suspended. Plaintiff appealed his suspension to the Elon University Appeal Board, which upheld it. Plaintiff complains primarily about Elon's failure to follow the timeline for the disciplinary process as outlined in the Student Handbook.

The Formal Conduct Procedures provide the following: violations "should be handled expeditiously and thoroughly," (Student Handbook (Doc. 15-1) at 35); the preliminary inquiry "typically take[s] one to seven (1-7) business days," (id. at 40); and "[m]ost [formal] hearings are completed within 30 days of the incident," (id. at 42). Plaintiff alleges that, in his case, Elon: failed to conduct the preliminary inquiry within one to seven business days, (Am. Compl. (Doc. 14) ¶¶ 20, 24); did not notify Plaintiff of his student conduct conference until twenty-nine days after the preliminary inquiry was initiated,

_____

[8] It also appears that Plaintiff received all of the entitlements identified as "Student Rights" in the Student Handbook. (See id. at 34.)

(id. ¶ 26); and did not conduct Plaintiff's formal hearing until fifty-five days after the altercation, (id. ¶ 33).

The Student Handbook does not purport to be a binding contract, and this court disagrees with Plaintiff's characterization of the Formal Conduct Procedures as explicit promises made by Elon. Rather, Elon's procedures are couched in language that avoids any commitment by Elon to follow rigid procedures – the language is aspirational, establishing no firm and definite timeline or terms. While violations should be handled "expeditiously and thoroughly," the Student Handbook then states that "not all situations are of the same severity or complexity," the "procedures are flexible," and the procedures "are not exactly the same in every situation." (Student Handbook (Doc. 15-1) at 35.) Whether a violation is handled "expeditiously and thoroughly" clearly depends on the circumstances of the violation. As to the one-to-seven-day period for the preliminary inquiry, Elon's use of "typically" neither limits the period to that timeframe nor excludes atypical timeframes. And the statement that "most" hearings are conducted within thirty days is a statement of historical experience, not a firm commitment to conduct hearings in the future within thirty days.

- 21 -

Elon's use of this open-ended language in the Student Handbook does not evince Elon's manifestation of an intent to be bound, which is required to form a contract with Plaintiff. See Parker, 182 N.C. App. at 232, 641 S.E.2d at 737 (certain citations omitted) (citing Croom, 182 N.C. at 220, 108 S.E. at 737). In addition, Elon reserves the right to modify the procedures in its Student Handbook without notice to its students. (See Student Handbook (Doc. 15-1) at 1 ("Updates to all sections of the *Student Handbook* may be posted periodically.").) Elon's reservation significantly undermines any inference that the Code of Conduct or Formal Conduct Procedures form an enforceable contract. See Cash v. Lees-McRae Coll., Inc., No. 1:18CV52, 2018 WL 7297876, at *12 (W.D.N.C. Aug. 13, 2018), R&R adopted by, No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), appeal filed, No. 19-1135 (4th Cir. Feb. 6, 2019) (citing Biggs v. Ocwen Loan Servicing, LLC, No. 1:14CV783, 2015 WL 4651809, at *4 (M.D.N.C. Aug. 5, 2018)) ("[B]ecause the Student Code of Conduct could be altered by Defendant College at any time, without consideration, it was not a valid and enforceable contract."). This court concludes from the language of the Student Handbook that the procedures outlined therein are not enforceable contractual obligations.

- 22 -

Plaintiff also alleges that Elon "breached its contractual promises to Shaw by failing to make a decision based on a preponderance of the evidence." (Am. Compl. (Doc. 14) ¶ 45.) In support of that allegation, Plaintiff alleges that his "conduct file" did not contain any of the witness statements. (See id. ¶ 36.) But Plaintiff admits that he tackled and struck Schar and that Elon's Director of Student Conduct spoke with Plaintiff, Schar, and two other witnesses. (See id. ¶¶ 14, 21, 28, 30, 33.) Plaintiff alleges no plausible facts to support his conclusion that Elon failed to base its decision upon a preponderance of the evidence. In an effort to raise some inference of wrongdoing, Plaintiff makes much of his alleged belief that Elon issued Schar a less severe disciplinary suspension. (See id. ¶¶ 37, 46.) In the absence of more facts, however, that is not

clear.[9] More importantly, Plaintiff's allegations concerning Schar's punishment do not advance Plaintiff's assertion that the Code of Conduct and Formal Conduct Procedures form an enforceable contract. Inconsistent punishment – on which this court in no way opines – would be a fact to consider in analyzing whether Elon acted contrary to language in the Student Handbook, not whether that language formed a contractually enforceable promise in the first place.

Plaintiff does argue that Williams, the Director of Student Conduct, failed to consult with the Dean of Students prior to rendering his disciplinary decision, as the Student Handbook provides a hearing officer should do when their recommended sanction is disciplinary suspension. (Pl.'s Resp. (Doc. 17) at 6.) It is not clear, however, what benefit inures to Plaintiff

---

[9] Plaintiff alleges that Schar received a "lesser disciplinary suspension" and "assaulted three students, including two females." (Am. Compl. (Doc. 14) ¶¶ 37, 46.) Plaintiff does not allege what violations Elon considered as to Schar. Instead, Plaintiff alleges what he was told about Schar's conduct. (Id. ¶¶ 10-11.) Further, Plaintiff's allegations in this regard resemble a substantive challenge to Elon's disciplinary decision, a challenge precluded by the very cases on which Plaintiff relies. See McFadyen, 786 F. Supp. 2d at 983 ("[T]he Court will not entertain a substantive challenge to Duke's disciplinary decision . . . ."); Myers, 2018 WL 325310, at *2 (noting that the plaintiffs' "breach of contract claim survives on a distinction between enforcing substantive rights under codes of conduct and enforcing procedural mechanisms for imposing discipline").

from the consultation provision. The hearing officer is required only to consult with the Dean of Students, not to seek or follow any recommendation from the Dean. (See Student Handbook (Doc. 15-1) at 42.) Furthermore, there is no corresponding timeframe to the consultation requirement. Plaintiff points to Williams entering a case resolution form seventeen minutes after the start of Plaintiff's hearing as the best evidence that Williams failed to consult with the Dean. But the Student Handbook provides that a case resolution form merely indicates whether a student was "Responsible" or "Not Responsible" for a violation. (Id.) Plaintiff's case resolution form "indicat[ed] that Shaw was responsible for fighting or acts of aggression and disorderly conduct." (Am. Compl. (Doc. 14) ¶ 34.) But that alleged fact does not create a reasonable inference that no consultation as to Plaintiff's punishment occurred, whether immediately after the hearing or at all, especially absent any specific allegation as to when Elon announced Plaintiff's punishment.

Taking the facts alleged as true, it appears that Elon might have deviated from the norms outlined in its Formal Conduct Procedures, but those norms are not part of an enforceable contract under North Carolina law. For all the reasons set forth herein, Defendant's motion will be granted.

- 25 -

IV.  **CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss, (Doc. 15), is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Amended Complaint, (Doc. 14), is **DISMISSED**.

A Judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 18th day of July, 2019.

_____
             United States District Judge